O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROMEO B. PADILLA,

                Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

)
)
)
)
)
)
)
)
)
)

Case No. SACV 14-00642-KK

MEMORANDUM AND ORDER

Plaintiff Romeo B. Padilla seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is AFFIRMED.

///
///
///
///

1

# I.

## PROCEDURAL BACKGROUND

On January 24, 2011, Plaintiff filed an application for DIB.  Administrative Record ("AR") at 115-24.  On March 24, 2011, the Agency denied the application.  Id. at 65-67.  On July 18, 2011, after reconsideration, the Agency affirmed the denial of the application.  Id. at 76-79.

On August 5, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 80.  On May 18, 2012, a hearing was held before ALJ Joseph P. Lisiecki III.  Id. at 40-59.  On July 18, 2012, the ALJ issued a decision denying Plaintiff's application.  Id. at 22-29.

On August 14, 2012, Plaintiff asked the Agency's Appeals Council to review the ALJ's decision.  Id. at 17-18.  On March 5, 2014, the Appeals Council denied Plaintiff's request for review.  Id. at 1-6.  The ALJ's decision therefore became the final decision of the Commissioner.  Id.

On April 23, 2014, Plaintiff filed the instant action.  ECF No. ("dkt.") 1.  On December 17, 2014, pursuant to the Court's Case Management Order, see Dkt. 8, the parties filed a Joint Stipulation ("JS"), which the Court has taken under submission without oral argument.  See Dkt. 19.

# II.

## RELEVANT FACTUAL BACKGROUND

Plaintiff was born on December 22, 1955, and his alleged disability onset date ("AOD") is December 22, 2009.  AR at 28.  Plaintiff alleges disability based upon: (1) right eye blindness; (2) left eye glaucoma; (3) hypertension; and (4) diabetes.  Id. at 133, 337.  Plaintiff was 54 years old at the time of the AOD, and 56 years old at the time of the hearing before the ALJ.  Plaintiff has at least a high school education, is able to communicate in English, and last worked in 2009 as security guard.  Id. at 134.  Plaintiff also previously worked as a delivery driver for a courier service.  Id.

///

**A.      Treating Sources**

     **1.      Dr. Francis Te**

In 2007, Plaintiff began to receive treatment for hypertension and diabetes from Dr. Francis Te, an internal medicine physician at USC Internal Medicine, Inc.  AR at 136-37.  On December 21, 2009, Dr. Te completed a Claim for Disability Insurance Benefits Doctor's Certificate ("Doctor's Certificate") in support of Plaintiff's disability claim.  Id. at 192.  The Doctor's Certificate is a form issued by and submitted to the Employment Development Department ("EDD") of the State of California.  Id.  The form describes Plaintiff's diagnosis as "blindness . . . [and] retinopathy/diabetes."  Id.  The form also includes a single line in which to state "Findings," in which Dr. Te wrote: "[Plaintiff] totally blind on [right] eye; [left] eye with severe glaucoma; unable to see/drive . . . ."[1]  Id.

On March 1, 2011, Dr. Te saw Plaintiff during a follow-up appointment.  Id. at 365.  Reporting on the follow-up, Dr. Te noted Plaintiff continued to suffer from persistent pain and chronic blindness in his right eye and that he "really doubt[ed] [Plaintiff] could go back to work."  Id. at 365-66.  Dr. Te also noted Plaintiff's diabetes and hypertension were in "good control."  Id. at 365.  Lastly, Dr. Te reported that Plaintiff stated he could not walk around without hitting people because of his vision problems.  Id.

On April 7, 2011, Dr. Te saw Plaintiff for another follow-up appointment.  Id. at 362.  Reporting on the follow-up, Dr. Te noted Plaintiff suffered from diabetes mellitus, retinopathy, and chronic left eye hyphema.  Id. at 363.

On June 7, 2011, Dr. Te saw Plaintiff for another follow-up appointment.  Id. at 359.  Reporting on the follow-up, Dr. Te remarked Plaintiff suffered from right eye blindness and chronic left eye hyphema.  Dr. Te also noted Plaintiff's diabetes was "well

---

[1] No medical records have been presented to the Court detailing Plaintiff's treatment by Dr. Te from 2007 to 2011.

1    controlled" with medication.  <u>Id.</u> at 360.

2         On September 7, 2011, Dr. Te saw Plaintiff for another follow-up appointment.  <u>Id.</u>

3    at 355.  Reporting on the follow-up, Dr. Te noted that while Plaintiff had experienced

4    several hypoglycemic episodes, Plaintiff's diabetes was in "fair control."  <u>Id.</u> at 356.  Dr.

5    Te also stated Plaintiff's hypertension was "[w]ell-controlled" with medication.  <u>Id.</u>

6         On September 26, 2011, Dr. Te completed a "Medical Statement Regarding

7    Diabetes for Social Security Disability Claim" form.  <u>Id.</u> at 344.  In the Statement, Dr. Te

8    marked that Plaintiff suffered from Type II diabetes and retinitis proliferans.  <u>Id.</u>  Dr. Te

9    concluded Plaintiff was unable to work and could not lift anything on either an occasional

10   or frequent basis.  <u>Id.</u>  Dr. Te also completed a "Medical Statement Regarding Physical

11   Abilities and Limitations for Social Security Disability Claim" form, noting Plaintiff was

12   blind in one eye and had reduced visual acuity in the other.  <u>Id.</u> at 345.  Dr. Te again

13   concluded on this form that Plaintiff was unable to work.  <u>Id.</u>

14        On April 16, 2012, Dr. Te completed another "Medical Statement Regarding

15   Diabetes for Social Security Disability Claim" form.  <u>Id.</u> at 346.  Dr. Te marked that

16   Plaintiff suffered from Type II diabetes, retinitis proliferans, neuropathy, cataracts, and

17   nephropathy.  Dr. Te concluded Plaintiff was unable to work as a result.  <u>Id.</u>  Dr. Te also

18   completed a "Physical Residual Functional Capacity Questionnaire."  <u>Id.</u> at 347-51.  In

19   the Questionnaire, Dr. Te stated Plaintiff had poor vision and pain in his left foot.  <u>Id.</u> at

20   347.  Dr. Te indicated Plaintiff could sit for more than two hours at a time, but could only

21   stand for thirty minutes at a time.  <u>Id.</u> at 348.  Dr. Te also observed that Plaintiff could

22   only stand for less than two hours and could sit for about two hours in an eight-hour

23   working day.  <u>Id.</u> at 349.  Dr. Te concluded that due to his impairments, Plaintiff could

24   not lift anything in a competitive work situation and would need to be absent from work

25   for more than four days per month if he were employed.  <u>Id.</u>

26        **2.    Dr. Vikas Chopra**

27        From 2008 to as late as April 20, 2012, Plaintiff also received treatment for vision-

28   related problems at Doheny Eye Center.  <u>Id.</u> at 137, 378.  On April 20, 2012, Dr. Vikas

Chopra, an ophthalmologist at Doheny Eye Center, completed a "Vision Questionnaire," stating Plaintiff's best corrected visual acuity in his left eye was 20/25. Id. at 423. Dr. Chopra observed Plaintiff suffered from mild blurriness in his left eye and had no vision in his right eye. Id. Dr. Chopra also observed Plaintiff had no depth perception. Id. at 423-24. Lastly, Dr. Chopra noted Plaintiff did not have any exertional limitations related to his vision problems and could frequently stoop, crouch, and climb ladders. Id. at 424.

**B.    Plaintiff's Pre-Hearing Allegations**

In a "Function Report" dated February 28, 2011, Plaintiff described his daily activities. AR at 151. Plaintiff stated he mowed his yard for thirty minutes twice a week and cleaned his garage for one hour twice a week. Id. Plaintiff stated he needed help lifting or pushing heavy objects while performing these tasks. Id. Plaintiff also stated he drove, went to a local mall, shopped in stores for medication, and watched television. Id. at 152-53. Lastly, Plaintiff claimed he could walk one mile without needing to stop and rest and could resume walking after fifteen minutes of rest. Id. at 154.

In an "Extertion Questionnaire" dated May 30, 2011, Plaintiff again described his daily activities. Id. at 166. Plaintiff claimed he climbed five flights of stairs, lifted five gallons of water four times per week, washed dishes for fifteen minutes each day, and emptied his trash for fifteen to twenty minutes each day. Id. Plaintiff also stated he could walk one mile in an hour-and-a-half. Id. at 165. Plaintiff alleged he felt dizzy, short of breath, and numb in his legs after climbing stairs and walking. Id. at 165-66. Lastly, Plaintiff claimed he carried grocery items for fifty feet two times a week and drove an automatic car as far as fifteen to twenty miles at a time. Id. at 165.

**C.    State Agency Medical Consultant's Opinion**

On June 28, 2011, Dr. V. Phillips, a state agency medical consultant, reviewed Plaintiff's medical file and completed a "Physical Residual Functional Capacity Assessment." AR at 329-34. In the Assessment, Dr. Phillips concluded Plaintiff had not established that he suffered from any exertional, postural, manipulative, or

communicative limitations.  Id. at 330-32.  Dr. Phillips noted that while Plaintiff did suffer certain visual limitations in his right eye and could not perform work requiring precise stereoscopic vision, he had 20/25 vision in his left eye.  Id. at 331-32.  Dr. Phillips also noted Plaintiff had indicated being able to drive and that there was no evidence Plaintiff had suffered any organ damage.  Id. at 333.  Hence, Dr. Phillips concluded Plaintiff's claims regarding his symptoms were only "partial[ly] credible" and diagnosed Plaintiff with diabetes mellitus and diabetic retinopathy with chronic blindness in his right eye.  Id. at 329.

**D.    ALJ Hearing**

**1.    Plaintiff's Testimony**

At the May 18, 2012 hearing before the ALJ, Plaintiff testified he could not see with his right eye, but could see and read with his left eye.  AR at 44-45, 48-49.  Plaintiff also testified he felt pain in his right eye during cold weather.  Id. at 53.  Plaintiff stated he used eye drops and medication to treat both eyes.  Id. at 50, 54.

In addition, Plaintiff stated he had felt numbness in his feet for the past year and felt dizzy because of his diabetes.  Id. at 46, 49, 52.  Plaintiff mentioned also feeling numbness in his hands.  Id. at 51.

Plaintiff testified he could not stand for longer than fifteen to twenty minutes.  Id. Plaintiff also claimed he was unable to walk more than thirty minutes at a time and felt numbness in his feet when he sat down.  Id. at 51-52.

Plaintiff also testified he had had diabetes for twenty-five years and had never been treated with insulin shots.  Id. at 48.  Plaintiff also testified his blood sugar levels were typically below 200 mg/dL every day.  Id.

Plaintiff stated he had not been able to drive since 2009, because he was afraid he would get into an accident due to problems with his vision.  Id. at 46.  Plaintiff claimed his children had to drive him if he wished to go somewhere.  Id. at 45-46.

Lastly, Plaintiff testified he usually stayed at home during the day, sitting and walking around.  Id. at 52.  Plaintiff claimed he did not engage in outings or activities.

1  Id. at 52-53.

2        **2.    Vocational Expert's Testimony**

3        The ALJ presented various descriptions of hypothetical individuals to vocational

4  expert ("VE") Ronald Hatakeyama, and queried the expert as to what, if any, jobs such an

5  individual would be able to perform.  The first hypothetical individual was an "individual

6  with the [Plaintiff]'s education, training, and work experience . . . who cannot see out of

7  his right eye" and who was "not able to perform work requiring stereoscopic vision,

8  avoid even moderate exposure to hazards such as machinery, heights, and open pools of

9  water."  Id. at 55.  The ALJ asked the VE whether such an individual would "be able to

10 perform [Plaintiff's] past work."  Id.  The VE answered he was not certain such an

11 individual could work as a security guard as Plaintiff had, but stated such an individual

12 could still work in Plaintiff's former position as a courier.  Id.  The VE also stated such

13 an individual would be able to work as a packager or linen room attendant, as those

14 positions are described in the Dictionary of Occupational Titles ("DOT").  Id. at 55-56

15       Referencing Dr. Te's observations in his April 2012 Questionnaire, the ALJ asked

16 what jobs would be available to a second hypothetical individual who (1) could only sit

17 and stand two hours of an eight hour day, (2) would have to miss four or more days of

18 work per month, and (3) could not persist during a normal forty-hour work week.  Id. at

19 56.  The VE stated no work would be available to such an individual.  Id.

20       After the ALJ finished examining the VE, Plaintiff's counsel presented

21 descriptions of additional hypothetical individuals to the VE, and asked whether those

22 individuals would be able to work.  Id. at 56-57.  Plaintiff's counsel asked the VE if a

23 person who could only sit or stand for two hours a day could perform light work.  Id. at

24 57.  The VE answered such an individual could not perform light work.  Id.  The VE also

25 stated that sedentary work would be the only work available to such an individual and

26 that Plaintiff had no transferrable skills that he could use for sedentary work.  Id.

27 Plaintiff's counsel then made a brief closing argument.  Id. at 57-58.

28                                                             **III.**

## STANDARD FOR EVALUATING DISABILITY

In order to qualify for DIB, a claimant must demonstrate a medically determinable physical or mental impairment that (1) prevents her from engaging in substantial gainful activity and (2) is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)     Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.[2]

(4)     Is the claimant capable of performing work she has done in the past?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)     Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)).  In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  This involves, inter alia, evaluating the credibility of a claimant's testimony regarding his capabilities.  Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012).

1   (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

2          The claimant has the burden of proof at steps one through four, and the

3   Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.

4   Additionally, the ALJ has an affirmative duty to assist the claimant in developing the

5   record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets her

6   burden of establishing an inability to perform past work, the Commissioner must show

7   that the claimant can perform some other work that exists in "significant numbers" in the

8   national economy, taking into account the claimant's residual functional capacity

9   ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100;

10  Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

11                                     **IV.**

12                          **THE ALJ'S DECISION**

13  **A.     Step One**

14         At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity

15  since December 22, 2009, the alleged onset date" of disability.  AR at 24.

16  **B.     Step Two**

17         At step two, the ALJ found Plaintiff "has the following severe impairments:

18  chronic angle closure glaucoma in the right eye; central retinal vein occlusion in the right

19  eye; blindness in the right eye; primary open angle glaucoma in the left eye; and cataract

20  in the left eye."  Id.

21         The ALJ found Plaintiff's impairment of diabetes to be non-severe.  Id.  While the

22  ALJ admitted there was "objective evidence in the medical record that [Plaintiff] has

23  been evaluated and treated for diabetes," the ALJ noted the condition "was being

24  managed medically" and "no aggressive treatment was recommended or anticipated for

25  this condition."  Id.  In support, the ALJ cited the fact that Plaintiff only had an A1c level

26

27

28

                                       9

1   of 6.9 percent in June 2011.[3]  Id.

2       The ALJ also found Plaintiff's impairment of hypertension to be non-severe.  Id. at

3   25.  The ALJ determined the impairment did not cause "more than a minimal limitation in

4   [Plaintiff's] ability to perform basic work activities."  Id.  In support, the ALJ cited

5   medical records showing Plaintiff's blood pressure level was often within normal limits,

6   or only slightly elevated.  Id.  In short, the ALJ concluded Plaintiff's hypertension was

7   "being managed medically, and should be amenable to proper control by adherence to

8   recommended medical management and medication compliance."  Id.  Furthermore, the

9   ALJ also concluded there was no evidence Plaintiff had a history of stroke, sustained

10   organ damage, cardiovascular disease, or functional limitations related to hypertension.

11   Id.  For these reasons, the ALJ found the impairment to be non-severe.  Id.

12   **C.   Step Three**

13       The ALJ found Plaintiff did not have an impairment or combination of

14   impairments that meets or equals any of the impairments listed in 20 C.F.R. Part 404,

15   Subpart P, Appendix 1.  Id.

16   **D.   RFC Determination**

17       The ALJ found Plaintiff "has the residual functional capacity to perform a full

18   range of work at all extertional levels but with the following nonexertional limitations:

19   not able to perform work requiring precise stereoscopic vision; and avoid even moderate

20   exposure to hazards such as machinery, heights, or open pools of water."  Id.

21       When determining Plaintiff's RFC, the ALJ first considered Plaintiff's claims

22   regarding his symptoms in his live testimony and in the paper record.  Id. at 26.  Plaintiff

23

24   _____

25     [3] The hemoglobin A1c test demonstrates "whether the blood sugar level has been
     controlled over the previous few weeks.  The normal level for glycoslated hemoglobin is

26   less than 7 percent.  Diabetics rarely achieve such levels, but tight control aims to come
     close to it.  Levels above 9 percent show poor control, and levels about 12 percent show

27   very poor control."  *The Merck Manual of Medical Information*, at 722-23 (Home ed.

28   1997).

1  claimed he had pain in his right eye, especially during cold weather.  Id.  Plaintiff also

2  claimed he had numbness in his feet and suffered from dizziness as a result of his

3  diabetes.  Id.  Furthermore, Plaintiff stated he experienced pain after five minutes of

4  standing, walking, or sitting and could only walk for thirty minutes at a time.  Id.  At the

5  same time, Plaintiff also claimed he could lift five gallons of water four times per week,

6  lift grocery items for fifty feet, walk one mile, and climb stairs.  Id.

7       The ALJ concluded that while Plaintiff's medically determinable impairments

8  could reasonably be expected to cause the symptoms Plaintiff alleged, Plaintiff's

9  statements concerning the intensity, persistence, and limiting effects of these symptoms

10  were not credible.  Id.  The ALJ provided three reasons in support of this conclusion.  Id.

11  at 26-27.

12       First, the ALJ noted an inconsistency in Plaintiff's statements.  Id. at 27.  At the

13  hearing before the ALJ, Plaintiff testified he had stopped driving in 2009 and had to ask

14  family members to drive him.  Id.  However, in February and May 2011, Plaintiff

15  reported he still drove a car.  Id.

16       Second, the ALJ noted Plaintiff engaged in a "somewhat normal level of daily

17  activity and interaction."  Id.  Plaintiff admitted engaging in activities of daily living,

18  including personal care, mowing, cleaning the garage, driving a car, shopping in stores,

19  paying bills, reading, watching television, spending time with others, and going to the

20  mall every day.  Id.  Because of the "physical and mental abilities and social interactions

21  required to perform these activities," the ALJ reasoned Plaintiff's participation in these

22  activities diminished the credibility of his claims of disability.  Id.

23       Lastly, the ALJ cited medical opinion evidence.  The ALJ cited agency medical

24  consultant Dr. Phillips' "Physical Residual Functional Capacity Assessment."  Id.  The

25  ALJ "accord[ed] great weight to this opinion because it is substantiated by objective

26  medical evidence and consistent with the record as a whole."  Id.

27       The ALJ also cited the opinion of Dr. Chopra, Plaintiff's treating ophthalmologist.

28  Id.  Dr. Chopra determined Plaintiff did not have exertional or postural limitations

related to his vision problems.  <u>Id.</u>  While noting this opinion was not inconsistent with evidence in the record, the ALJ nonetheless gave "less weight to this opinion."[4]  <u>Id.</u>

The ALJ dismissed the opinion of Dr. Te, Plaintiff's treating physician.  <u>Id.</u>  Dr. Te determined Plaintiff could not lift anything, could only stand or walk for less than two hours in an eight-hour working day, and would also be absent from work more than four days per month because of his impairments.  <u>Id.</u>  While the ALJ conceded that "a treating physician's opinion is entitled to substantial weight," the ALJ concluded Dr. Te's opinion "was largely based on Plaintiff's subjective accounts, provided little explanation or rationale, and was contradicted by the opinion of another examining physician."  <u>Id.</u>

**E.    Step Four**

At step four, the ALJ found Plaintiff is not capable of performing past relevant work as a courier and a security guard.  <u>Id.</u>

**F.    Step Five**

At step five, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  <u>Id.</u> at 28.  While the ALJ conceded Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations," the ALJ cited the VE's testimony that Plaintiff could perform the requirements of a packager or a linen room attendant.  <u>Id.</u>  Hence, the ALJ concluded Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  <u>Id.</u>  As a result, the ALJ found Plaintiff was "not disabled" at Step Five.  <u>Id.</u>

## V.

## PLAINTIFF'S CLAIMS

In the Joint Stipulation, Plaintiff asserts the following claims:

1.    The ALJ erroneously discredited the opinion of Plaintiff's treating

_____

[4] The ALJ's decision does not specify why the ALJ assigned less weight to Dr. Chopra's opinion.  In any case, Dr. Chopra's opinion is consistent with the ALJ's findings.

12

1      physician.

2   2.      The ALJ's RFC assessment is unsupported by substantial evidence.

3   3.      The ALJ's adverse credibility determination is unsupported by clear and

4          convincing evidence.

5   JS at 2.[5]

6   **VI.**

7   **STANDARD OF REVIEW**

8      Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's

9   decision to deny benefits.  This Court "may set aside a denial of benefits if it is not

10  supported by substantial evidence or it is based on legal error."  Pinto v. Massanari, 249

11  F.3d 840, 844 (9th Cir. 2001) (citation and internal quotation marks omitted).

12     "Substantial evidence" is evidence a reasonable person might accept as adequate to

13  support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is

14  more than a scintilla but less than a preponderance.  Id.  To determine whether substantial

15  evidence supports a finding, the reviewing court "must review the administrative record

16  as a whole, weighing both the evidence that supports and the evidence that detracts from

17  the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998);

18  see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing

19  court "may not affirm simply by isolating a specific quantum of supporting evidence")

20  (citations and internal quotation marks omitted).  "If the evidence can reasonably support

21  either affirming or reversing," the reviewing court "may not substitute its judgment" for

22

23  _____

    [5] Because the Court's holding regarding the first and third issues bear on the propriety
24  of the ALJ's RFC determination, the Court addresses the first and third issues prior to
    reaching the second issue.  Likewise, because the ALJ's ruling on Plaintiff's credibility
25  bears on whether the ALJ properly discredited the opinion of Plaintiff's treating
    physician, the Court addresses the third issue before the first issue.  See Tonapetyan v.
26  Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that a physician's opinion premised
27  on a claimant's subjective complaints may be discounted where the record supports the
    ALJ in discounting the claimant's credibility).
28

1  that of the Commissioner.  <u>Reddick</u>, 157 F.3d at 720-21; <u>see also</u> <u>Molina v. Astrue</u>, 674

2  F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than

3  one rational interpretation, we must uphold the ALJ's findings if they are supported by

4  inferences reasonably drawn from the record.").

5       The Court may review only the reasons stated by the ALJ in his decision "and may

6  not affirm the ALJ on a ground upon which he did not rely."  <u>Orn v. Astrue</u>, 495 F.3d

7  625, 630 (9th Cir. 2007).  If the ALJ erred, the error may only be considered harmless if

8  it is "clear from the record" that the error was "inconsequential to the ultimate

9  nondisability determination."  <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir.

10  2006) (citation and internal quotation marks omitted).

11                                      **VII.**

12                                 **<u>DISCUSSION</u>**

13  **A.    The ALJ's Adverse Credibility Determination was Supported by Specific,**

14         **Clear, and Convincing Reasons.**

15       Plaintiff challenges the ALJ's finding that "[Plaintiff]'s allegations [are] less than

16  fully credible."  JS at 11-13, 14-15; AR at 27.  Plaintiff argues this determination is "not

17  supported by clear and convincing reasons."  JS at 13.

18       **1.    Legal Standard**

19       "In assessing the credibility of a claimant's testimony regarding subjective pain or

20  the intensity of symptoms, the ALJ engages in a two-step analysis."  <u>Molina v. Astrue</u>,

21  674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).  "First, the ALJ must determine

22  whether there is objective medical evidence of an underlying impairment which could

23  reasonably be expected to produce the pain or other symptoms alleged."  <u>Id.</u> (citations

24  and internal quotation marks omitted).  "If the claimant has presented such evidence, and

25  there is no evidence of malingering, then the ALJ must give specific, clear, and

26  convincing reasons in order to reject the claimant's testimony about the severity of the

27  symptoms."  <u>Id.</u> (citations and internal quotation marks omitted).  "At the same time, the

28  ALJ is not required to believe every allegation of disabling pain, or else disability

14

1  benefits would be available for the asking . . . ." Id. (citations and internal quotation

2  marks omitted).

3         "In evaluating the claimant's testimony, the ALJ may use ordinary techniques of

4  credibility evaluation." Id. (citations and internal quotation marks omitted).  "For

5  instance, the ALJ may consider inconsistencies either in the claimant's testimony or

6  between the testimony and the claimant's conduct; unexplained or inadequately explained

7  failure to seek treatment or to follow a prescribed course of treatment; and whether the

8  claimant engages in daily activities consistent with the alleged symptoms . . . ." Id.

9  (citations and internal quotation marks omitted).

10         "If a claimant is able to spend a substantial part of his day engaged in pursuits

11  involving the performance of physical functions that are transferable to a work setting, a

12  specific finding as to this fact may be sufficient to discredit a claimant's allegations."

13  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth

14  Circuit has held there are two legitimate instances where such daily activities may be

15  used to support an adverse credibility determination: (1) where the daily activities

16  contradict the claimant's other testimony and (2) where the daily activities meet "the

17  threshold for transferable work skills." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)

18  (internal citation omitted).  "While a claimant need not vegetate in a dark room in order

19  to be eligible for benefits, the ALJ may discredit a claimant's testimony when the

20  claimant reports participation in everyday activities indicating capacities that are

21  transferable to a work setting . . . ." Molina, 674 F.3d at 1112-13 (internal quotation

22  marks and citations omitted).  "Even where those activities suggest some difficulty

23  functioning, they may be grounds for discrediting the claimant's testimony to the extent

24  that they contradict claims of a totally debilitating impairment." Id. (citations and

25  internal quotation marks omitted).

26         "When evidence reasonably supports either confirming or reversing the ALJ's

27  decision, we may not substitute our judgment for that of the ALJ." Ghanim v. Colvin,

28  763 F.3d 1154, 1164 (9th Cir. 2014) (citation and internal quotation marks omitted).

1   Even if "the ALJ erred in relying on one of several reasons in support of an adverse

2   credibility determination," the error is considered harmless if "the ALJ's remaining

3   reasoning and ultimate credibility determination were adequately supported by

4   substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

5   1155, 1162 (9th Cir. 2008) (citation and emphasis omitted).  "So long as there remains

6   substantial evidence supporting the ALJ's conclusions on credibility and the error does

7   not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed

8   harmless and does not warrant reversal." Id. (citations, internal quotation marks, and

9   alterations omitted); see also id. at 1163 ("Here, the ALJ's decision finding [the claimant]

10  less than fully credible is valid, despite the [ALJ's] errors . . . .").

11          **2.      Application**

12          Here, the ALJ conceded Plaintiff's "medically determinable impairments could

13  reasonably be expected to cause" Plaintiff's alleged symptoms.  AR at 26.  However, the

14  ALJ gave "specific, clear, and convincing reasons" for rejecting Plaintiff's claims of

15  disability. Molina, 674 F.3d at 1112.  First, the ALJ cited an inconsistency between

16  Plaintiff's hearing testimony and his statements in his February 28, 2011 Function Report

17  and his May 30, 2011 Exertion Questionnaire.  AR at 27.  While Plaintiff testified he had

18  not been able to drive a car since 2009 as a result of his visual impairments, id. at 51, he

19  claimed in the Function Report that he did drive. Id. at 152-53.  Furthermore, Plaintiff

20  claimed in the Exertion Questionnaire that he not only drove, but that he did so for as far

21  as fifteen to twenty miles at a time. Id. at 166.  The ALJ found this inconsistency

22  diminished the credibility of Plaintiff's allegations of disability. Id. at 27.  Second, the

23  ALJ cited Plaintiff's statements in his Function Report and Exertion Questionnaire that

24  he engaged in ordinary daily activities, including shopping, climbing stairs, lifting

25  gallons of water, mowing, and cleaning his garage. Id.; see also id. at 151-53 (Function

26  Report); 166 (Exertion Questionnaire).  Because these activities required abilities that

27  could be transferred to the workplace, the ALJ concluded Plaintiff's statements further

28  diminished Plaintiff's credibility. Id. at 27.

1    Both of these considerations were valid grounds for discrediting Plaintiff's

2    allegations of disability.  First, the Ninth Circuit has recognized that inconsistencies in a

3    Plaintiff's testimony support an adverse credibility determination.  See Molina, 674 F.3d

4    at 1112.  Second, the Ninth Circuit has recognized that an ALJ determining a claimant's

5    credibility may properly take into account a claimant's participation in daily activities,

6    where the activities contradict the claimant's testimony or evidence an ability to work.

7    See, e.g., id. at 1112 (stating a claimant's "everyday activities" may "contradict claims of

8    a totally debilitating impairment"); Orn, 495 F.3d at 639; Fair v. Bowen, 885 F.2d 597,

9    603 (9th Cir. 1989).  Here, as the ALJ noted, Plaintiff's statements that he engaged in

10   shopping, carried groceries and gallons of water, performed household chores, and drove

11   an automatic car demonstrated an ability to work.  See Morgan, 169 F.3d at 600

12   (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for

13   his friend's child was evidence of claimant's ability to work).  Furthermore, such

14   statements also contradicted Plaintiff's testimony at the hearing before the ALJ that he

15   did not engage in outings or activities and stayed home during the day.  AR at 52-53.  See

16   Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (evidence that claimant's

17   self-reported activities suggested a higher degree of functionality than reflected in

18   subjective symptom testimony adequately supported adverse credibility determination).

19   Hence, under Ninth Circuit precedent, the ALJ's adverse credibility determination was

20   based on "specific, clear, and convincing reasons."  Molina, 674 F.3d at 1112.

21   Plaintiff argues his statements in February and May 2011 were not "current" at the

22   time of the hearing, which took place in May 2012.  JS at 15.  That is, Plaintiff appears to

23   suggest the February and May 2011 statements were not necessarily inconsistent with

24   Plaintiff's hearing testimony regarding his functionality because his impairments may

25   have worsened by the time of the hearing.  Id.  This argument is meritless however,

26   because Plaintiff cites no objective medical evidence suggesting his impairments

27   worsened in the time between his February and May 2011 statements and the hearing.

28   See Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (noting claimant carries

the burden of proof at steps one through four of the five-step sequential evaluation process).  Rather, the evidence in the record suggests Plaintiff's impairments had not worsened.  For instance, Plaintiff's counsel at the hearing conceded Plaintiff's diabetes was controlled by medication.  AR at 43, 48.  Furthermore, Dr. Chopra stated in an April 2012 "Vision Questionnaire" that while Plaintiff had no vision in his right eye, his best corrected visual acuity in his left eye was 20/25.  Id. at 423-24.  Dr. Chopra concluded that while Plaintiff had no depth perception, he only suffered from "mild blurriness" in his left eye and had "mildly limited vision" in the left eye.  Id.  In other words, Dr. Chopra's assessment indicates Plaintiff suffered no more than "mild" vision problems in his left eye just prior to the hearing.  Hence, given that the record does not suggest Plaintiff's condition was any worse on the eve of the hearing than at the time of his statements in February and May 2011, the Court concludes the ALJ's adverse credibility finding was based on "specific, clear, and convincing reasons."  Molina, 674 F.3d at 1112.

**B.**      **The ALJ's Rejection of the Treating Physician's Opinion was Based on Specific and Legitimate Reasons Supported by Substantial Evidence.**

Plaintiff argues the ALJ improperly rejected Dr. Te's opinion and placed improper weight on Dr. Phillips' opinion.  JS at 3.

**1.      Background**

On April 16, 2012, Dr. Te completed a "Medical Statement Regarding Diabetes for Social Security Disability Claim" form.  AR at 344.  Dr. Te noted on the form that Plaintiff suffered from Type II diabetes, retinitis proliferans, neuropathy, cataracts, and nephropathy.  Id.  Dr. Te concluded Plaintiff was unable to work as a result.  Id.  On the same day, in a "Physical Residual Capacity Assessment Questionnaire," Dr. Te also concluded Plaintiff could (1) not lift anything, (2) only stand or walk for less than two hours a day, (3) only sit for about two hours, and (4) would be absent from work more than four days per month because of his impairments.  Id. at 349.  The ALJ rejected Dr. Te's opinion, concluding it "was largely based on Plaintiff's subjective accounts, [and]

18

provided little explanation or rationale . . . ." Id. at 27.  The ALJ also noted Dr. Te's opinion was inconsistent with the opinions of non-examining state medical consultant Dr. Phillips, and Plaintiff's treating ophthalmologist, Dr. Chopra.  Id.

### 2. Legal Standard

A treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.  See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  When it is contradicted by another doctor's opinion, a treating or examining physician's opinion may only be rejected if, after considering the  factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) for evaluating medical opinions, the ALJ articulates "specific and legitimate" reasons supported by substantial evidence in the record.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Accordingly, an ALJ confronted with conflicting medical opinions must consider, *inter alia*, the length of the treatment relationship and the frequency of examination; the medical specialties of the various medical sources; the extent to which the medical opinions are supported by explanations; and the consistency of each medical opinion with the record as a whole.  20 C.F.R. § 404.1527(c)(2)-(6); see also Orn, 495 F.3d at 631. Where an ALJ properly discounts a claimant's credibility, he is "free to disregard" a treating physician's opinion when it is based on a claimant's subjective accounts. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 3. Discussion

Here, the ALJ's rejection of Dr. Te's opinion was based on "specific and legitimate reasons supported by substantial evidence in the record."  See Reddick, 157 F.3d at 725. No evidence in the record corroborated Dr. Te's conclusion that Plaintiff's impairments limited his capacity to stand, walk, and lift objects.  Indeed, Dr. Te's notes regarding his

appointments with Plaintiff in March, June, and September 2011 all indicate Plaintiff's hypertension and diabetes were controlled by medication.  AR at 365-66, 362-63, 356.  In addition, while Dr. Te frequently stated in these notes that Plaintiff suffered from right eye blindness, Dr. Te never mentioned Plaintiff had any problems standing, sitting, walking, or lifting objects.[6]  See id.

Furthermore, Dr. Te's opinion was inconsistent with both Dr. Chopra's and Dr. Phillips' assessment of Plaintiff.  In a "Vision Questionnaire" on April 20, 2012, Dr. Chopra concluded Plaintiff had no exertional limitations related to his vision problems and only had "mild" vision-related difficulties with his left eye.[7]  Id. at 424.  In addition, state medical consultant Dr. Phillips concluded in a June 28, 2011 "Physical Residual Capacity Assessment" that while Plaintiff's medical record evidenced vision-related impairments, it did not show Plaintiff had exertional limitations.  Id. at 330-32.

Admittedly, as Plaintiff argues, Dr. Te had treated Plaintiff for years prior to Plaintiff's hearing before the ALJ.  JS at 7.  Ordinarily, because he served as Plaintiff's treating physician for an extended period of time, Dr. Te's opinions would be entitled to great weight.  See McAllister, 888 F.2d at 602.  However, as the ALJ concluded, Dr. Te's account was based entirely on Plaintiff's subjective accounts of his symptoms and was not corroborated by any medical record evidence.  See AR at 27.  Because the ALJ

---

[6] Plaintiff cites a statement by Dr. Te in a March 1, 2011 report on a follow-up appointment with Plaintiff.  JS at 4.  In the report, Dr. Te noted Plaintiff *stated* he could not walk around without hitting people.  AR at 417.  Plaintiff appears to interpret this statement as establishing that Dr. Te *found* Plaintiff actually had difficulty walking.  JS at 4.  However, this statement only appears to have been a report of what Plaintiff *told* Dr. Te.  Dr. Te's report of Plaintiff's statement alone does not establish the truth of the statement itself.

[7] Plaintiff contends Dr. Chopra's assessment of Plaintiff's exertional limitations was not reliable because Dr. Chopra was likely focusing on Plaintiff's visual limitations.  JS at 3.  The ALJ appears to have taken this into account in his decision, explicitly noting that he gave "less weight" to Dr. Chopra's medical opinion.  AR at 27.

permissibly discounted Plaintiff's credibility (as detailed in Section VII.A.3.), the ALJ was thus "free to disregard" Dr. Te's opinion, despite the weight normally afforded to the opinion of a treating physician. See Tonapetyan, 242 F.3d at 1149. Hence, the Court concludes the ALJ's rejection of Dr. Te's opinion in favor of that of Dr. Phillips was based on "specific and legitimate" reasons supported by substantial evidence in the record. Garrison, 759 F.3d at 1012.

**C.     The ALJ's RFC Determination was Supported by Substantial Evidence.**

**1.     Background**

In his July 18, 2012 written decision, the ALJ found Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: not able to perform work requiring precise stereoscopic vision; and avoid even moderate exposure to hazards such as machinery, heights, or open pools of water." AR at 25.

Plaintiff challenges the ALJ's RFC determination. JS at 8. Plaintiff claims the ALJ's RFC determination is erroneous because the ALJ: (1) did not consider the side-effects of Plaintiff's medications in his RFC assessment; and (2) did not consider the impact of Plaintiff's age on his RFC. Id. at 8, 10.

**2.     Legal Standard**

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms (including pain) that are reasonably attributed to a medically determinable impairment. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1545(a)(3) (a claimant's assessed RFC is based upon all the relevant evidence in the case record). Where the ALJ's  RFC determination is supported by substantial evidence and contains no legal error, the Court may not second guess it.  See Lindquist v. Colvin, No. 13-35418, 2014 WL 5394562, at *2 (9th Cir. Oct. 24, 2014).

**3.     Application**

Here, as detailed in Section VII.A-B., the ALJ's RFC determination was supported

by substantial evidence, including a proper adverse credibility determination, Plaintiff's medical records, and Dr. Phillips' and Dr. Chopra's assessments of Plaintiff's limitations. Furthermore, Plaintiff does not cite and the Court cannot find any evidence Plaintiff's capacities were impaired in any particular way by the side-effects of his medications or by his age.  Hence, given substantial evidence supported the ALJ's RFC determination, the Court concludes it was not erroneous.

**VIII.**

**<u>CONCLUSION</u>**

IT IS THEREFORE ORDERED that judgment be entered AFFIRMING the decision of the Commissioner.

DATED: February 9, 2015

_____
HON. KENLY KIYA KATO
United States Magistrate Judge